**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | AARON J. CUJAS and : | Chapter 7 |
| | JACQUELINE A. CUJAS, : | |
| | : | |
| | Debtors : | Bky. No.  07-10602(WWB) |
| | : | (Pending in Bankr. W.D. Pa.) |
| | : | |
| | : | |
| FRANCES WILLIAMS, as Administratrix : | |
| of the Estate of Nathaniel M. McCoy, : | |
| | : | |
| | Plaintiff : | |
| | : | |
| | v. : | |
| | : | Adv. No.  07-228(ELF) |
| GEORGE JUNIOR REPUBLIC and : | |
| AARON J. CUJAS, : | |
| | : | |
| | Defendants : | |

# M E M O R A N D U M

## I.

On September 28, 2007, this court entered an Order ("the Remand Order") remanding the above-captioned adversary proceeding to the court from which it originated, the Court of Common Pleas of Philadelphia County ("the CP Court").  On October 3, 2007, Defendant George Junior Republic ("GJR") filed a notice of appeal from the Remand Order.  Presently before the court is GJR's motion  ("the Motion") requesting a stay of the Remand Order pending appeal.[1]

For the reasons set forth below, I will deny the Motion.

---

[1] The Motion was filed with a request for an expedited hearing on October 5, 2007. On October 11, 2007, I entered an Order requiring that any response to the Motion be filed by October 10, 2007 and staying the Remand Order pending disposition of the Motion.  Docket Entry No. 27.

-1-

**II.**

To understand the issues posed by the Motion, it is necessary to review briefly the procedural history of this matter. The Remand Order sets forth a detailed recitation of that history. Because the history is known to the parties and the Remand Order is of record, see Docket Entry No. 19, I will not repeat the entire procedural history in this Memorandum. I will, however, summarize briefly the most salient parts.

On April 5, 2006, Plaintiff Frances S. Williams, as Administratrix of the Estate of Nathaniel M. McCoy ("the Plaintiff") filed an action in the CP Court against GJR and Aaron J. Cujas ("the CP Action"). In the CP Action, the Plaintiff asserted claims for negligence, gross negligence, recklessness and wrongful death and survival arising from the death of sixteen (16) year old Nathaniel M. McCoy, who drowned while swimming under the Kennedy Mills Bridge in Slippery Rock, Pennsylvania. At the time of the incident giving rise to the CP Action, Defendant Cujas was an employee of GJR.

Defendant Cujas ("the Debtor") is a debtor in a no-asset chapter 7 bankruptcy case pending in the U.S. Bankruptcy Court for the Western District of Pennsylvania ("the W.D. Bankruptcy Court"). That bankruptcy case was commenced on April 20, 2007, a little more than one year after the Plaintiff initiated suit against the Defendants.

On June 6, 2007, the Plaintiff filed a motion for relief from the automatic stay in the W.D. Bankruptcy Court.[2] On June 27, 2007, while the Plaintiff's stay relief motion was pending, GJR removed the CP Action to this court pursuant to 28 U.S.C. §1452(a). On July 3, 2007, a few days after the removal of the CP Action, the W.D. Bankruptcy Court granted the Plaintiff relief from the automatic stay under 11 U.S.C. §362(d) to prosecute her claim against the Debtor.

---

[2]   See Bky. No. 07-10602-WWB (Docket Entry No. 25).

The modification of the stay was made retroactive to April 20, 2007.[3]

When GJR removed the CP Action to this court, no adversary proceedings against the Debtor relating to the scope of his chapter 7 discharge (i.e., neither a dischargeability proceeding under 11 U.S.C. §523(a), nor an objection to discharge under 11 U.S.C. §727(a)) were pending in the W.D. Bankruptcy Court.  On August 1, 2007, after the removal of the CP Action to this court and after the W.D. Bankruptcy Court granted the Plaintiff relief from the automatic stay, GJR filed a Complaint to Determine Nondischargeability of Debt ("the Nondischargeability Complaint"), thereby initiating an adversary proceeding ("the Nondischargeability Adversary Proceeding") in the W.D. Bankruptcy Court, docketed as Adv. No. 07-1069-WWB.[4]

Simultaneously with the removal of the CP Action to this court, GJR filed a motion requesting that the venue of the removed proceeding be transferred to the U.S. District Court for the Western District of Pennsylvania.  Less than three weeks later, the Plaintiff filed a motion requesting that this court remand the removed proceeding to the CP Court or alternatively, abstain from deciding the case.

As stated above, on September 28, 2007, the Remand Order was entered.  The Remand Order granted the Plaintiff's motion to remand, denied the Plaintiff's motion for abstention as moot and denied GJR's motion to transfer venue.

The reasons for the decision to remand the removed proceeding back to the CP Court were expressed in some detail in the Remand Order.  Those reasons may be summarized as

---

[3]  See Bky. No. 07-10602-WWB (Docket Entry No. 43).

[4]  In the Nondischargeability Complaint, GJR requested a judicial determination that, to the extent that the Debtor may be found to have acted willfully and maliciously and GJR is vicariously liable to the Plaintiff for Debtor Cujas' conduct, the Debtor is liable to GJR under principles of contribution or indemnification and his liability to GJR is nondischargeable pursuant to 11 U.S.C. §523(a)(6).

-3-

follows:

- GJR's construction of 28 U.S.C. §157(b)(5) is erroneous. That provision does not bar the bankruptcy court from deciding abstention and remand issues for the type of claim removed in this case.

- This court is not a mere "conduit" court that must automatically transfer a removed proceeding to the court in which the allegedly related bankruptcy is pending (the "home" court). Rather, the court to which a proceeding is removed:

    (a) may determine whether there is subject matter jurisdiction under 28 U.S.C. §1334(a) to support the removal under 28 U.S.C. §1452(a); and

    (b) has the discretion to determine, on a case by case basis, whether it is appropriate to defer a decision on remand or abstention to the "home" court or whether it is appropriate to make the remand or abstention determination itself.

- In this case, it was appropriate for this court to make the decision regarding jurisdiction, remand and abstention.

- Federal subject matter jurisdiction is determined as of and must exist at the time of removal and no federal bankruptcy subject matter jurisdiction over the removed action under 28 U.S.C. §1334(b) existed at the time of removal of the CP Action.

- The absence of subject matter jurisdiction at the time of the removal provided grounds for the remand of the removed proceeding to the CP Court under 28 U.S.C. §1452(b).

- As an alternative holding and assuming <u>arguendo</u> that subject matter jurisdiction over the removed proceeding existed, equitable remand of the removed proceeding was appropriate due to the following factors:

    (1) the relatively modest degree of "relatedness" that the removed proceeding had to the bankruptcy case, especially because the efficient administration of the bankruptcy estate (<u>i.e.</u>, the collection or distribution of estate assets) would be neither hindered significantly nor advanced materially by bankruptcy court resolution of the removed proceeding;

    (2) that the degree of relatedness was not sufficient to overcome the deference that should be accorded to the Plaintiff's choice

      of forum;

(3) the fact that the removed proceeding was bottomed exclusively on state law claims;

(4) a concern that the removal of the Philadelphia State Court Action to this court was part of pattern of forum-shopping that non-debtor GJR may have embarked upon to avoid the Plaintiff's choice of forum;

(5) that, while the remand may result in the need for a second trial limited to the issue of dischargeability, that possibility would not adversely affect the bankruptcy proceedings, particularly because the parties are capable of providing to the state court jury interrogatories that are designed to provide guidance to assist the bankruptcy court in determining the scope of Debtor's discharge; and

(6) considerations of comity – i.e., that the Philadelphia State Court Action had been pending in state court for one (1) year prior to the commencement of the Bankruptcy Case, that CP Court had ruled on numerous pretrial motions, that the related docket was 20 pages long, that at the time of removal, the CP Action was set for a November 2007 trial and that the CP could be timely adjudicated by the CP Court.

### III.

As a threshold matter, the Plaintiff asserts that this court lacks jurisdiction to grant a stay pending appeal. Relying upon two Third Circuit cases interpreting the effect of 28 U.S.C. §1447(c) and (d) on a district court's authority to reconsider a remand order or consider a motion to file an amended notice of removal subsequent to the issuance of a remand order,[5] the Plaintiff argues that the physical mailing of a certified copy of a remand order by the Clerk of the Bankruptcy Court is the key jurisdictional event that divests the court of jurisdiction. Building

---

[5] See Hunt v. Acromed Corp., 961 F.2d 1079, 1081(3d Cir. 1992); Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 225 (3d Cir. 1995).

upon this legal construct, Plaintiff asserts that a certified copy of this court's Remand Order was mailed to the CP Court on October 1, 2007 and, accordingly, as of that date, this court no longer had authority to enter orders in this case.

Assuming, arguendo, that Plaintiff's statement of applicable law is correct, Plaintiff's argument is still unavailing because it is based on a mistaken premise: that a certified copy of the Remand Order has been mailed by the clerk to the clerk of the CP Court. It has not. The docket does not reflect that a certified copy of the Remand Order was mailed to the CP court. It reflects only that a copy of the Remand Order was mailed. If the copy mailed to the CP Court had been certified, that fact would have been noted expressly on the docket. There is no such notation on the docket.[6]

As Plaintiff herself observes, a remand order is not self-executing. See, e.g., Hunt, 961 F.2d at 1081. The "key jurisdictional event" required under Hunt and Trans Penn to divest the federal court of jurisdiction – the mailing of the certified copy of the remand order – has not yet occurred. It follows that this court retains jurisdiction to consider GJR's Motion.[7]

Having determined that the court has subject matter jurisdiction, I next consider the legal principles which guide my decision on the Motion.

---

[6] Compare In re Violet E. Trusty, Adv. No. 07-00012 (ELF) (Bankr. E.D. Pa.), Docket Entry No. 9 (docket entry reflecting service of certified copy of remand order on state court) with Docket Entry No. 21 in this case.

[7] As mentioned above, after the Motion was filed, I expressly stayed the Remand Order pending my ruling on the Motion by Order entered October 11, 2007. See n.1, supra.

## IV.

This court has the power to stay its order pending the outcome of an appeal.  See Fed. R. Bankr. P. 8005.  Indeed, Rule 8005 mandates that a party seeking a stay pending appeal of a bankruptcy court order make the initial request for a stay to the bankruptcy court.

The factors to be considered in determining whether to grant a stay pending appeal are:

> (1) whether the movant has made a showing of likelihood of success on the merits of the appeal;
>
> (2) whether the movant will be subject to irreparable harm if the stay is not granted;
>
> (3) whether the granting of the stay would substantially harm other interested parties; and
>
> (4) whether the granting of the stay would serve the public interest.

In re Edwards, 228 B.R. 573, 575 (Bankr. E.D. Pa. 1999); accord, e.g., In re Blackwell, 162 B.R. 117, 119 (E.D. Pa. 1993); In re Genesis Health Ventures, Inc., 367 B.R. 516, 519 (Bankr. D. Del. 2007).

Given the frequency with which parties seek stays pending appeal in our court system, it is perhaps surprising that there is no clear judicial consensus on how to apply these factors.

Initially, there is some difference of opinion whether the four (4) factors must all be established to merit the grant of a stay pending appeal.  Some courts have found that an appellant's failure to persuade the court regarding any one of these factors is sufficient to deny the stay.  E.g., In re Blackwell, 162 B.R. at 120.  However, the majority view is that the court may balance all four (4) factors in deciding whether to grant a stay pending appeal.  In re Edwards, 228 B.R. at 575 -576; In re Genesis Health Ventures, Inc., 367 B.R. at 519.

I will follow the majority view on this issue.  I consider a ruling on a motion for a stay

pending appeal to involve the exercise of a court's equitable discretion.  E.g., Crouch v. Prior, 1995 WL 673263, at *3 (D.V.I. Nov. 7, 1995).  The majority rule is more consonant with the court's role in making decisions based on the equities and provides the court with the flexibility required to reach a fair result.

Next, there are different views as to what must be shown to demonstrate a "likelihood of success" on the merits of the appeal.

One view is that the movant must have a "strong case" on appeal.  E.g., In re Polaroid Corp., 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004).  This is equivalent to the standard employed when a court decides whether to grant a preliminary injunction under Fed. R. Civ. P. 65.  Other courts disagree, suggesting that in considering a request for a stay pending appeal, the term refers to issues on appeal that are sufficiently serious, substantial, difficult or doubtful, as to make them "fair ground for litigation."  E.g., In re Lickman, 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003) (quoting In re Yellow Cab Cooperative Ass'n, 192 B.R. 555, 557 (D. Colo.1996) and United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enterprise Management Consultants, Inc., 883 F.2d 886, 889 (10th Cir.1989)).

Another court suggests that the "likelihood of success" prong is measured on a sliding scale after consideration of the balance of the parties' respective hardships:

> [T]he court first balances the hardships to the parties before determining how strong a showing of success is required by the moving party.  Under this balancing test, the likelihood of success that need be shown by the movant will vary inversely with the degree of injury the movant will suffer without a stay. If the balance of harm tips decidedly toward the movant, then the movant need not show as strong a likelihood of success on the merits as when the balance tips less decidedly.

In re MAC Panel Co., 2000 WL 33673784, at *3 (Bankr. M.D.N.C. Mar. 8, 2000) (citation omitted).

-8-

I find the "sliding scale" methodology described in the passage quoted above provides the better approach to the issue. It is consistent with the fundamentally equitable nature of the decision to grant or deny a stay pending appeal and the flexibility it affords the court in making an equitable decision is compelling.

Finally, there is a split in the case law on the issue whether the risk that an appeal may become moot constitutes irreparable injury for purposes of obtaining a stay pending appeal. This is a significant issue in this case because GJR argues that the threat of mootness is the irreparable harm it will suffer if a stay pending appeal is not granted.[8]

Earlier this year, the court in In re Adelphia Communications Corp., 361 B.R. 337 (S.D.N.Y. 2007) collected many cases discussing the issue. The court stated that the majority view is that "a risk of mootness, standing alone, does not constitute irreparable harm," but observed that a significant minority of courts have held to the contrary. Id. at 347-348 & nn. 39-40; see also MAC Panel, at *4. The Adelphia Communications court then adopted the "minority view," reasoning as follows:

> [T]he fact is that loss of appellate rights is a "quintessential form of prejudice." Thus, where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied.

---

[8] GJR contends:

> GJR anticipates that [the Plaintiff] will attempt to advance the Wrongful Death Litigation to trial as quickly as possible to avoid the risk of a reversal on appeal. If [the Plaintiff] is successful in advancing the Wrongful Death Litigation to trial (or even close to trial), GJR would be in danger of having its appeal rendered moot, thereby being denied an opportunity to have its appeal heard on the merits.

GJR's Motion for Stay Pending Appeal ¶32 (Docket Entry No. 25). I agree that the scenario described by GJR is probable if the stay is denied.

Id. at 348 (footnote omitted) (quoting In re Country Squire, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996)); accord, In re WestPoint Stevens, Inc., 2007 WL 1346616, at *5 (S.D.N.Y. May 9, 2007).

I am persuaded by and agree with the Adelphia Communications Corp. court on this issue. Thus, in considering the Motion, I accept the proposition that the potential loss of a party's appellate rights through the mootness doctrine may constitute irreparable harm. I hasten to add, however, that the existence of such harm is no guarantee that an appellant is entitled to a stay pending appeal. It is also necessary to go one step further and consider the nature of the underlying dispute and the harm that the loss of appellate rights may have on the moving party. That harm must then be balanced against the potential harm other parties may suffer if the stay is granted. And, as stated above, the balancing of the harms analysis also affects how the court evaluates the "likelihood of success on appeal" factor.[9]

Next, I apply the principles discussed above to the matter before me.

### V.

As suggested in MAC Panel, I first consider the effect that the grant or denial of a stay will have on the parties. The essential competing interests that I perceive are GJR's interest in obtaining a federal forum and the Plaintiff's interest in the most prompt resolution of her claims.

**the potential harm to GJR**

In the present context, I do not consider the possibility that GJR's appeal may be mooted to place at risk any especially weighty interests of GJR. This is so for two (2) related reasons.

---

[9] Of course, the fourth factor in the test is whether granting a stay is in the public interest. I do not see that factor as relevant in the matter before me, so I will not discuss it further.

-10-

First, what is at stake for GJR is an asserted procedural right, not its substantive rights. Specifically, the appeal involves GJR's asserted right to defend against the Plaintiff's claims in a federal forum. If GJR's appeal is mooted, the only effect will be that the litigation will take place in a state court, rather than a federal court. In state court, GJR will have access to an impartial and competent tribunal, fully capable of adjudicating its defenses to the Plaintiff's claims. See generally Pennzoil Co., Inc. v. Texaco, Inc., 481 U.S. 1, 15, 107 S.Ct. 1519, 1528 (1987) (federal courts should "assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary"). Without minimizing the significance of the right of access to the federal court system, I am not persuaded that the mooting of GJR's appeal would grievously harm GJR.

Second, GJR's asserted right to a federal forum is itself a circumscribed right. The only principled reason for GJR's removal of the CP Action to federal court is its potential "relatedness" (within meaning of 28 U.S.C. §1334(b)) to the Debtor's bankruptcy case and the economy that potentially could be achieved for both the parties and the court if the CP Action and the Nondischargeability Adversary Proceeding are tried together.[10] However, GJR is a defendant in the CP Action and, generally speaking, it is the plaintiff that chooses the forum in which litigation takes place and that choice is entitled to some deference. See , e.g., Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1226 n.4 (3d Cir. 1995). Further, in the bankruptcy system, removal of pending actions to federal court is disfavored in certain circumstances. Our Court of Appeals has instructed that a state court plaintiff's choice of forum is to be honored by a

---

[10] The Plaintiff suggests that GJR's position is not principled, but rather is a bad faith attempt to forum shop in light of the fact that motions to transfer venue from Philadelphia County to a state court in Western Pennsylvania have been denied by the CP Court. In deciding this matter, I need not judge the propriety of GJR's motivation.

bankruptcy court having only "related to" jurisdiction unless a significant interest in bankruptcy case administration is implicated:

> [A] party who wishes to litigate a state claim in a state court, but finds himself in a federal court solely because the controversy is related to a bankruptcy, should be able to insist upon a state adjudication if that will not adversely affect the bankruptcy proceedings.

Stoe v. Flaherty, 436 F.3d 209, 214 (3d Cir. 2006).

     Accepting arguendo that the novel legal theory of nondischargeability that is the foundation of GJR's Nondischargeability Adversary Proceeding raises a bona fide claim under 11 U.S.C. §523(a), and employing the terminology used by the Court of Appeals in Stoe, I do not find the possibility or even probability that the bankruptcy court may have to conduct a trial of the Nondischargeability Adversary Proceeding will "adversely affect" the bankruptcy proceedings. The Debtor's bankruptcy case is a "no-asset" case. Prompt and efficient case administration (i.e., the collection or distribution of estate assets) is not dependent in any way upon the outcome of the removed proceeding. Thus, GJR's interest in a obtaining a federal forum is minimal because it is overwhelmed by the policy of honoring the Plaintiff's choice of forum.

     Further, I fail to see any significant benefit in compelling the Plaintiff to litigate her claims in federal court because there need not be much duplication between the trial of the CP Action and the trial of the Nondischargeability Adversary Proceeding. To the extent that some overlap exists, the parties and the CP Court can provide instructions and interrogatories to the jury at the conclusion fo the trial in the CP Court. Appropriate jury interrogatories will allow the jury to make the findings of fact that will not only resolve the merits of the Plaintiff's state law claims, but also permit the application of issue preclusion principles, thereby narrowing and facilitating any further litigation necessary in the bankruptcy court to determine the scope of the

Debtor's bankruptcy discharge. Put colloquially, the trial in the CP Court would be the "main event," leaving relatively narrow issues remaining for the bankruptcy court to decide. As a result, I do not perceive a benefit arising from the removal of the CP Action sufficient to outweigh the Plaintiff's choice of forum. Since I see little benefit achieved by the removal, I fail to see how GJR is harmed in any concrete way if its appeal is mooted and it must litigate its defenses in state court rather than federal court.[11]

To sum up, having accepted the principle that the potential mooting of GJR's appeal is a harm that satisfies the irreparable harm requirement as a threshold matter, I have evaluated the nature and degree of harm GJR is likely to suffer if its appeal becomes moot. This is necessary to permit me to balance that harm against the harm the Plaintiff may suffer if the stay is granted. It also affects the degree to which GJR must establish a likelihood of success on the merits. As set forth above, I am not persuaded that any critical legal interests of GJR are at risk if its appeal is mooted.

### the potential harm to the Plaintiff

My ruling on the Motion is made somewhat more nuanced because, having concluded that the potential harm to GJR is modest at best, I also conclude that the Plaintiff, too, is not

---

[11] Certainly, GJR cannot argue that the harm it will suffer is having to litigate in eastern Pennsylvania rather than western Pennsylvania. The ultimate issue implicated by the appeal of the Remand Order is whether the Plaintiff's claims will be litigated in state court or federal court. The particular location of the federal court that might try the case is not directly at issue. While GJR has taken the position before the CP Court that Philadelphia County is an inconvenient forum, the CP Court has rejected that argument, as I pointed out in the Remand Order. If for no other reason that the decision of the CP Court should be respected as a matter of comity, any alleged harm GJR contends that it may suffer from litigating its defenses in Philadelphia County is not cognizable and should not be considered in deciding whether to stay the Remand Order.

likely to suffer any acute harm if a stay is granted.

The primary harm to the Plaintiff is the continuing delay in the resolution of her claims that will result from a stay pending appeal.[12]  This is a cognizable harm and it does offset the harm to GJR to some extent.  But the harm to the Plaintiff arising from what I anticipate to be a delay of another three (3) to nine (9) months is not concrete and, by itself, is not decisive in defeating the Motion.[13]

---

[12]    In her response to the Motion, Plaintiff also asserts that there are other harms to be considered:

> GJR's claim that Wrongful Death Litigation does not involve parties who are crucially ill, near death, or facing urgent circumstances is not only specious on its face but it also ignores the circumstances in this case of which GJR is well aware. The heir to plaintiff's decedent's estate is his four (4) year old daughter Jade Latimer who has been deprived of her father's love and financial support since his untimely death and whose only sources of financial support are her teenage mother's limited income and the generosity of others including plaintiff Frances Williams. Moreover, plaintiff, unlike GJR, has active claims pending in state court and bears the risk of the unavailability of key witnesses at trial, some of whom have not yet been completely deposed including Cujas and his wife. Cujas is a flight risk who has already shown a propensity to avoid service of process and even his counsels' attempts to contact him. Plaintiff will be substantially prejudiced in her ability to prove her claims against GJR if Cujas is unavailable for a complete deposition or at trial.

Plaintiff's Objection to GJR's Motion for Stay Pending Appeal at 5.  (Docket Entry No. 31).

The facts described in the passage quoted above are not supported by the current record and I may not consider them based solely on Plaintiff's counsel's representation in the Objection that GJR is "well aware" of them.  Therefore, I have not relied upon them in my decision to deny the Motion.  Had I concluded that other arguments were not determinative, I would have conducted a hearing to permit the Plaintiff an opportunity to produce evidence in support of these allegations because, if proven, they could affect the balance of the competing interests.

[13]    Certainly, there are inherent problems caused by delaying trial of a lawsuit, including the risk that "memories of witnesses fade and valuable evidence may be lost." Genesis Health Ventures, Inc., 367 B.R. at 522.  I do not minimize these concerns.  Further, a litigant's interest in a prompt resolution of his or her claims is not insignificant.  E.g., Bhatnagar

-14-

**likelihood of success on the merits**

Before analyzing the "likelihood of success" factor, I make two (2) observations.

First, as explained earlier, the likelihood of success that GJR needs to show is inversely proportional to the degree of injury the it will suffer without a stay. Having concluded that the potential harm to GJR is not substantial, the bar is higher for GJR with respect to the "likelihood of success on the merits" factor.

Second, in considering GJR's likelihood of prevailing on appeal, I am cognizant of the admonition that "it would be a rare judge who makes a ruling he or she thinks is 'likely' to be reversed on appeal." In re Hoekstra, 268 B.R. 904, 906 (Bankr. E.D. Va. 2000) . At the same time, however, trial judges can be sufficiently objective to evaluate whether a ruling on a particular issue is based on: (a) a settled legal principle, (b) a legal principle that divides the courts and whose outcome on appeal is uncertain; or (c) a legal principle that falls somewhere in between. Despite the inherent tension in the process, I have the duty to evaluate the likelihood of GJR's success on the merits in its appeal of the Remand Order.

The crux of the appeal turns on two issues. One of them is a pure issue of law. The other involved the exercise of this court's discretion.

The issue of law is whether, given the circumstances in this case, the bankruptcy court should have served as nothing more than a "conduit" and was obliged to transfer the removed CP

---

v. Surrendra Overseas Ltd., 52 F.3d at 1228 (stating "the well-worn but nevertheless truthful aphorism that 'justice delayed is justice denied'"). At the same time, however, the CP Action was filed in April 2006, less than two (2) years ago. I cannot characterize the delays in the case to date, or even the likely additional delay arising from a stay pending appeal of the Remand Order as inordinate delays that are likely to prejudice the Plaintiff in a material fashion.

Action to the U.S. District Court for the Western District of Pennsylvania.[14] The discretionary issue is whether, assuming that this court is not a mere conduit, I erred in exercising my discretion to remand the proceeding to the CP Court pursuant to 28 U.S.C. §1452(b). See, e.g., In re Raymark Industries, Inc., 238 B.R. 295, 299 (Bankr. E.D. Pa. 1999) (bankruptcy court has broad discretion in deciding whether a remand under 1452(b) is appropriate).

The two issues relate in the following way. If my conclusion that this court need not act as a mere "conduit" was correct, the decision whether to remand the proceeding was grounded in the equitable discretion accorded to the court under 28 U.S.C. §1452(b). If, as a matter of law, the court is not a mere "conduit" and may reach the merits of the §1452(b) issue, the §1452(b) decision is reviewed on appeal based on an "abuse of discretion" standard.[15] Under the abuse of discretion standard, the likelihood of reversal of the discretionary determination is not substantial. See, e.g., In re Machne Menachem, Inc., 2007 WL 172486, at *1 (M.D. Pa. Jan. 18, 2007) (observing that appellate court is "extremely deferential" when reviewing matters on an abuse of discretion standard). Consequently, in my view, if the bankruptcy court was not a mere "conduit," GJR does not have a reasonable likelihood of success on the issue whether there was an abuse of the discretion the court exercised under §1452(b).

---

[14] There is one other legal issue that GJR must press on appeal, i.e., the determination in the Remand Order that this court lacked subject matter jurisdiction because the Nondischargeability Adversary Proceeding had not yet been filed when GJR removed the CP Action. For purposes of the Motion, I will assume that GJR has a reasonable likelihood of success on its appeal of that issue. However, success on that issue does not require reversal of the Remand Order unless the alternate ground for the Order – equitable remand pursuant to 28 U.S.C. §1452(b) – was erroneous. Therefore, I will focus on GJR's likelihood of success on that issue.

[15] E.g., In re McCarthy, 230 B.R. 414, 416 (B.A.P. 9th Cir. 1999); Terral v. SCH Mgmt. Solutions, Inc., 2004 WL 2115486, at *2 (E.D. La. Sept. 21 ,2004); see also In re BWP Gas, LLC, 354 B.R. 701, 705 (E.D. Pa. 2006).

As for the "conduit" issue, while there is substantial legal authority for my conclusion that the bankruptcy court need not act as a mere "conduit," there is contrary authority supporting GJR's position. Thus, I acknowledge that GJR may have a meaningful prospect of prevailing on this issue. However, GJR's potential success on the "conduit" issue is not outcome determinative because, to achieve "true" success, GJR must also prevail on the merits of the §1452(b) remand motion.

In other words, even if this court is a mere "conduit," the only consequence is that the adversary proceeding would be transferred to the Western District of Pennsylvania where the Plaintiff is entitled to (and undoubtedly will) request equitable remand under 28 U.S.C. §1452(b). This is the request that I have concluded to be fully meritorious. Thus, even if I erred on the "conduit" issue, I consider it probable that the Plaintiff will nonetheless prevail in obtaining equitable remand under §1452(b) and the proceeding will return to the CP Court at the end of all of the procedural wrangling.[16] In this sense, GJR does not have a reasonable likelihood of success. It is only a question of whether the likely outcome happens sooner or later.

### final balancing of the relevant factors

The bottom line in my consideration of the relevant factors is as follows: considering the modest level of the potential harm GJR will suffer if a stay is not granted (discounted somewhat further by the modest level of harm the Plaintiff would suffer if the stay is granted) and the fact that it is unlikely that the appeal will achieve GJR's goal of obtaining a federal forum, I conclude

---

[16] I am aware that if equitable remand is raised after a transfer of venue to the Western District, it will be considered de novo by the court. However, I do not consider it likely that another court would deny the Plaintiff's motion for equitable remand under 28 U.S.C. 1452(b).

-17-

that it would not be equitable to grant GJR the stay pending appeal that it has requested. Rather, in my view, granting a stay will result in nothing more than delaying an outcome that is probably inevitable – trial of this proceeding in the CP Court. Therefore, I will enter an Order denying the Motion.[17]

Date:   October 22, 2007

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

---

[17] However, I will also direct the Clerk to forbear from mailing the CP Court a certified copy of the Remand Order for a period of ten (10) days. This will provide GJR with an opportunity, if it so chooses, to seek a stay pending appeal of the Remand Order from the district court.

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | **AARON J. CUJAS and** : | Chapter 7 |
| | **JACQUELINE A. CUJAS,** : | |
| | : | |
| | **Debtors** : | Bky. No. 07-10602(WWB) |
| | : | (Pending in Bankr. W.D. Pa.) |
| | : | |
| | : | |
| **FRANCES WILLIAMS, as Administratrix** : | |
| of the Estate of Nathaniel M. McCoy, | : | |
| | : | |
| | **Plaintiff** : | |
| | : | |
| | **v.** : | |
| | : | Adv. No. 07-228(ELF) |
| **GEORGE JUNIOR REPUBLIC and** : | |
| **AARON J. CUJAS,** | : | |
| | : | |
| | **Defendants** : | |
| | : | |

# O R D E R

**AND NOW**, upon consideration of the Motion of George Junior Republic for A Stay Pending Appeal (Docket Entry No. 25) and the response thereto, and for the reasons set forth in the attached Memorandum, it is hereby **ORDERED** that

1. The Motion is **DENIED.**

2. Unless this Order is stayed by an Order of the U.S. District Court, the Clerk shall mail a certified copy of the Remand Order to the Prothonotary, Court of Common Pleas, Philadelphia County on **November 5, 2007.**

|  |  |
|---|---|
| Date:  **October 22, 2007** | **ERIC L. FRANK**<br>**U.S. BANKRUPTCY JUDGE** |

**Counsel**
Robert F. Englert
Attorney for Plaintiffs

John Lucien
Attorney for George Junior Republic